UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CASE NO. 22-CR-10104-LTS

UNITED STATES OF AMERICA,

vs.

JAMMY ALPHONSE,

    **Defendant.**
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum. As outlined in more detail below, the Government agrees with defense counsel that the appropriate guidelines in this case are 70-87 months followed by a mandatory 24-month sentence. This is based upon an offense conduct level of 23 and a Criminal History Category ("CHC") of IV. For the following reasons, the Government recommends a sentence in the middle of the guidelines range, to 79 months, followed by the mandatory 24-month sentence for aggravated identity theft, for a total period of incarceration of 103 months.

**I.    BACKGROUND**

The Information that was filed in this case outlined the myriad of schemes and illegal activity that the Defendant was involved with. [DE 17]. Not only was the Defendant engaged in fraud to siphon away pandemic assistance relief using the names and personally identifiable information ("PII") of victims whose PII he stole, he was residing in an apartment using the name and identity of another person, he was dealing drugs, including fentanyl, and he was in possession of a firearm and a large quantity of ammunition. The Defendant committed these offenses while on pretrial release in no less than six open state cases. Presentence Investigation Report ("PSI"),

at ¶¶ 69-74.  Ultimately, for his conduct, the Defendant pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343, false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(b), aggravated identity theft, in violation of 18 U.S.C. § 1028A, felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

As is outlined in more detail in the PSI, in the early morning on July 26, 2021, a shooting took place in Cambridge, MA.  PSI, at ¶ 20.  While nobody was injured, multiple rounds were fired, one of which ultimately hit an air conditioner of a residence and others that hit a parked motor vehicle.  *Id.*  In responding to this shooting, law enforcement observed a vehicle associated with the Defendant fleeing the area of the shooting (hereinafter referred to as the "Suspect Vehicle").  PSI, at ¶¶ 17, 21.  The Suspect Vehicle ultimately crashed and was left abandoned at the Government Center exit ramp on Interstate 93.  *Id.* at ¶ 21.  Clothing recovered during the search of the vehicle matched clothing the Defendant was seen wearing the previous day (July 25, 2021) on surveillance video obtained from the building in East Boston where the Defendant was fraudulently renting an apartment using the name and PII, including social security number, of another person (hereinafter referred to as "Victim 1").  *Id.*  A sweatshirt was also found with the last name of Victim 1 within the vehicle.  *Id.*  Surveillance video from the apartment building also showed the Defendant returning home following the shooting wearing a black hoodie, black pants, dark colored boots, and a cross body bag.  Surveillance video obtained in connection with the crash and abandonment of the Suspect Vehicle showed an individual matching the Defendant's

description, wearing the same clothes, in the area of the crash in the early morning of July 26, 2021.  *Id.*

Ultimately, on August 6, 2021, a federal search warrant was executed at the Defendant's residence in East Boston.  This apartment was rented by the Defendant using the PII, including the name and social security number of Victim 1.  *Id.* at ¶ 23.  Within the apartment, law enforcement located a cross body bag matching the cross-body bag worn by the Defendant on July 26, 2021 and seen on surveillance video in the vicinity of the crash.  *Id.*  Next to the bag, law enforcement found a Glock 9mm firearm, among other items, including a Massachusetts motor vehicle citation issued to the Defendant in the Suspect Vehicle, and mail addressed to Victim 1 from National Grid in connection with an account that the Defendant opened in Victim 1's name.  *Id.*  Law enforcement also recovered approximately 81 grams of fentanyl within the apartment as well as a plastic bag containing a small amount of cocaine and a money counter.  *Id.* at ¶ 25.

Preceding this conduct, in May 2020, the Defendant engaged in a scheme to defraud the Massachusetts Department of Unemployment Assistance of pandemic unemployment assistance funds by filing approximately twelve applications using other persons' names and using other persons' PII.  In connection with this scheme, the Defendant took multiple steps, including creating fake email addresses in the victims' names to include on the applications.  *Id.* at ¶ 11.  The funds from these applications were directed into the Defendant's TD Bank account, where he received approximately $20,044, as well as into the bank accounts of various coconspirators.  *Id.* at ¶¶ 10-12.  These were real people's information that the Defendant used in order to try and defraud the government of money intended for those financially burdened by the pandemic.

## II. DEFENSE OBJECTIONS

Outlined below is the Government's response to the Defendant's outstanding objections to the PSI.

### a. Objection #2- Defendant's Objection to Paragraph 15

The Government agrees with the USPO that the information contained in Paragraph 15 should be included as relevant conduct. The Government would note that whether it is included or not, the Government remains committed to the loss amount in its Plea Agreement, which is more than $95,000 but less than $150,000, which is addressed in more detail *infra* in connection with Objection #4.

### b. Objection #3- Inclusion of the Information related to the July 26, 2021 Shooting in the PSI

To be clear, it does not appear that the Defendant is objecting to the veracity of the facts contained in the PSI related to the July 26, 2021 shooting. Instead, the Defendant appears to be merely objecting to their inclusion because he alleges that these facts are prejudicial. The facts included in the PSI related to the shooting on July 26, 2021, and the subsequent flight and crash of the Suspect Vehicle, along with the surveillance video tying the Defendant to the crash of the Suspect Vehicle, are properly before this Court as they provide insight into one of the bases for the search of the Defendant's residence, among other things. This information was included in the search warrant affidavit and the complaint that were filed in this case.

### c. Objection #4 & 5- Loss Amount

To clarify, in the Plea Agreement the Government agreed that the appropriate loss amount in this case was great than $95,000 but less than $150,000, for an eight-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(1)(E). While the Government has no correction to make to the

calculation of the loss amount by the United States Probation Office ("USPO") included in the PSI, the Government's recommendation will be governed by the loss amount included in its Plea Agreement.[1] Accordingly, the Government agrees with defense counsel that the appropriate offense level for Group One, governing Counts 1 and 2, is 17. Because the difference between the offense level for Group One is nine levels less than Group Two, which has an offense conduct of 26, no units are added pursuant to U.S.S.G. § 3D1.4. Accordingly, after acceptance, the Defendant's total offense level is a 23.

### d. Objection #7- Paragraph 58

The Government agrees with Probation that the Defendant should receive 1 criminal history point in connection with this offense. Accordingly, his CHC should remain a level IV.

### III. ARGUMENT

Based upon an offense level of 23 and a CHC of IV, it is the Government's position that the appropriate guidelines range in this case is 70-87 months on Counts 1, 2, 4, and 5, followed by a mandatory 24-month sentence on Count 3 (aggravated identity theft). The Government would also note that Count 5 (possession with intent to distribute more than 40 grams of fentanyl) carries a mandatory minimum sentence of five years, which must run consecutive to any sentence imposed on the aggravated identity theft count, *i.e.*, the Defendant is facing a mandatory minimum of at least seven-years imprisonment.

The Government is requesting a sentence of 79 months, which represents the middle of the guidelines, followed by the mandatory 24-months sentence required by the aggravated identity theft count, for a total of 103 months' imprisonment. This sentence would reflect the seriousness

---

[1] The PSI includes a loss amount between $150,000 and $250,000, which would provide a ten-level enhancement. *See* PSI, at ¶ 35.

5

of the Defendant's multiple offenses, the history and characteristics of the Defendant, including the Defendant's extensive criminal history, promote respect for the law, provide for just punishment, afford adequate deterrence, and protect the public from further crimes of this Defendant.  *See* 18 U.S.C. § 3553(a).  The facts of this case simply do not warrant a variance below the guidelines as the Defendant requests in his Sentencing Memorandum.

The Defendant's conduct in this case is very serious.  In the Information, the Defendant is essentially being held accountable for three different investigations—one related to fraudulently obtaining pandemic relief, another related to fraudulently obtaining a rental property, and finally an investigation into a shooting that led to a search of the Defendant's apartment and the recovery of a firearm, ammunition, and a very serious and harmful narcotic drug—fentanyl, among other things.  Each of these crimes on their own would be very serious, but the fact that the Defendant was engaged in all of this illegal and diverse conduct is particularly concerning and warranting of a within guidelines sentence.

What exacerbates and adds to the seriousness of this offense is the fact that the Defendant committed these crimes while he had multiple state cases pending, including one case where he was charged with trafficking in large quantities of cocaine, possession of a firearm, possession of ammunition, possession of a counterfeit credit card press, forging a credit card, receiving an improper credit card, identity theft, and receipt of stolen property.  PSI, at ¶ 69.  As is outlined in more detail in the PSI, similar in some ways to the instant matter, in 2018, a search warrant executed at a residence where the Defendant resided in Revere revealed a firearm, ammunition, cocaine, drug paraphernalia, money, and access device making equipment.  *Id.*  While this very serious case was pending, the Defendant went on to commit the instant offenses.  *Id.*  Clearly,

this shows a serious disregard for the law and the criminal justice system. But the 2018 case wasn't the only case that the Defendant had pending when he committed the instant offenses. As is outlined in the PSI, the Defendant had outstanding cases in multiple different courts for charges including receiving a stolen motor vehicle, possession and use of a stolen Registry of Motor Vehicles document, multiple charges for carrying a firearm and ammunition without a license on different dates, and identity fraud, among other things, when he committed the instant offenses. *Id.* at ¶¶ 70-74. Even after multiple arrests, the Defendant clearly did not adjust his conduct and continued to commit crimes that harmed the community.

With regard to the Defendant's scheme to receive pandemic assistance relief, the Defendant used the PII of real people to file his claims. He also undertook multiple steps to effectuate this crime, including obtaining the PII of at least twelve other people, creating fraudulent email addresses in their names, filling out applications for pandemic unemployment assistance on their behalf, and then funneling the proceeds from these fraudulent applications into his own bank account and the bank accounts of his coconspirators.

The Defendant also schemed to obtain an apartment using someone else's information. Again, he did this while he had multiple cases pending against him at the state. For a period of at least six months the Defendant resided at this apartment under an entirely different identity—the employees at the building knew him only as Victim 1 and during this period of time he opened accounts using Victim 1's name and PII. The Defendant even went as far as filing for rental relief in Victim 1's name, which was intended for those harmed by the pandemic.

Finally, the facts that led to the search of the Defendant's apartment are serious. They involve a shooting, a flight, and a subsequent crash and abandonment of a vehicle tied to the

Defendant.  The subsequent search of the Defendant's apartment revealed a firearm and over fifty rounds of ammunition—all while the Defendant had multiple outstanding state charges for possession of a firearm and ammunition.  The Defendant was also in possession of a deadly narcotics for purposes of distribution.

The Defendant, who is only 28 years old, has an extensive criminal history.   He has shown a clear disregard for the law and there is a real need for the sentence in this case to reflect the seriousness of the Defendant's offense, his extensive history, and the need to protect the public from future crimes of this Defendant.  The Defendant's conduct is clearly warranting of a high-end recommendation, however, because the Defendant timely accepted responsibility for his actions and entered into a Plea Agreement, the Government is recommending a sentence in the middle of the guidelines.  The Government is also recommending that the sentence in this case run concurrent to any sentences imposed in his outstanding state cases at the time of the instant arrest, as provided for in the Plea Agreement.   A variance simply is not warranted by the facts of this case.

## IV.  CONCLUSION

For all of these reasons, the Government respectfully requests that the Court impose a sentence in the middle of the guidelines as calculated by the Government of 79 months, followed by the twenty-four mandatory consecutive sentence mandated by 18 U.S.C. § 1028A.

    Respectfully submitted,

    RACHAEL S. ROLLINS
    UNITED STATES ATTORNEY

By:   */s/ J. Mackenzie Duane*
    J. Mackenzie Duane
    Assistant United States Attorney

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on September 9, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                   */s/ J. Mackenzie Duane*
                   J. Mackenzie Duane
                   Assistant United States Attorney